The judgment of the court was pronounced by
Preston, J.
John and Henry Bosler claimed a tract of land situated at the confluence of the Atchafalaya river and bayou Téche, which was supposed to have a front of twenty five arpents on the Téche, by forty arpents depth. In the year 1811, it was confirmed to them by the board of commissioners for the adjustment of land titles in the Western District of Louisiana, to the extent of 640 acres.
John Bosler had died, leaving a child, and Henry had been appointed the administrator of his estate.
On the 24th of November, 1809, five arpents front of the land by the ordinary depth had been sold as the property of Henry Bosler for his taxes, to Conrad Rohan.
In a suit of PincTcly against Henry Bosler, administrator of the estate of John Bosler, in the parish court of the county of Attakapas, on the 27th day of January, 1811, the sheriff, by virtue of an execution, sold the undivided half of the twenty-five arpents front belonging to the deceased, to Alexander Power. The deed was acknowledged before the parish judge, on the 21st of April, 1811, and recorded in his office, on the 21st of August, 1812. On the same day, by virtue of two executions in his hands, in the suits of McKeever Sf Co. v. Henry Bosler, and Coleman v. Henry Bosler, the remaining 74 arpents front of the claim, by forty in depth, were sold to Ramos Davis for $300. The sheriff’s deed was in like manner acknowledged before the parish judge, on the 21st of April, 1811, and recorded in his office the 21st of August, 1812.
By mesne conveyances, the defendant, acquired the interest of Conrad Rohan and Alexander Porter in the tract, but not that of Ramos Davis.
In 1832, Rebecca Bosler, the daughter and only heir of John Bosler, and claiming to be the only heir of Henry Bosler, instituted suit against the defendant for the whole tract of land. He called his vendors in warranty, who set up in defence the above mentioned tax and sheriff’s sales. The parties compromised the suit, by which the defendant acquired all the rights of John and Henry Bosler to the whole tract of land.
In the year 1845, the widow and heirs of Ramos Davis commenced the present suit against the defendant for the 74 arpents front on the Téche, sold by the sheriff to their ancestor in 1811.
*584 If the sheriff’s sale to Davis was legally made, and is sufficiently proved, they are entitled to recover, unless their action is barred by the prescriptions of ten, twenty, and thirty years, as plead by the defendant and his warrantors.
The defendant purchased and exhibited title for but five hundred and fifty-seven acres of the land, and cannot be said to have possessed as owner a greater quantity until his compromise with Rebecca Rosier on the 19th day of October, 1835. From that time until the commencement of this suit, in November, 1845, ten years had elapsed; but the plaintiffs were non-residents during the whole time, and the prescription of twenty years alone could, divest them of title, even if they all had been of age. And if the plaintiffs are entitled to an undivided part of the land, their action of partition is prescribed only by thirty years, which had not elapsed at the institution of this suit.
Is there, then, sufficient evidence of the forced alienation of 7J arpents front of the land to Ramos Davis? The plaintiffs gave in evidence two judgments rendered after issue joined against Henry Rosier. The executions issued upon them, which the sheriff returns: “that he had sold at public vendue, in the above suits, the right, interest and pretensions of Henry Rosier in and to 7J arpents front by the ordinary depth, situate near the junction of the bayou Téche with the Cliafalia, known by the name of the Indian Head, being so much of an undivided tract of twenty-five acres. Terms of sale: amount of costs cash, and the remainder at one year credit; purchaser, Dr. Ramos Davis. $300. Attakapas, January 27th, 1811. Ran. Eastin, Sheriff.” The other execution was returned partly satisfied by the sale. A sheriff’s deed was made, and recorded in the parish judge’s office in pursuance of this sale. A judgment, execution, sheriff’s return upon it, and deed are evidence of a valid forced alienation of property, and imposes on those who attack them the necessity of showing that the forms of law have not been complied with. Poultney’s Heirs v. Cecil, 8 L. R. 321.
We are of opinion, that the judgment, execution, and sheriff’s return, showing the adjudication and receipt of the money from the purchaser, are sufficient to prove the sale, without the deed. The adjudication by the sheriff, and payment of the price by the purchaser, are now, by the express provisions of the Code of Practice, sufficient to transfer the property, and, we think, were sufficient, under the statutes in'force in 1811. The sheriff’s deed was an additional renouncement of title to the purchaser, but the defendant’s rights were entirely ' divested by the judgment, execution, adjudication, and payment of the price by the buyer.
We are, moreover, of opinion, that the copy of the sheriff’s deed was properly admitted in evidence in this case, and that the bills of exception to its admission in evidence, and to the refusal to admit the clerk’s certificate to show that it was not recorded in the clerk’s office, are untenable.
The act of 1805, regulating the practice of the Old Superior Court, required sheriff’s deeds to be recorded in the clerk’s office. But the parish court in which the judicial proceedings took place, by which the property in controversy was sold, was created in 1807. The judge was not provided with a clerk, but performed the duties of the clerk himself. He issued the executions in the suits in which the property was sold, himself. The sheriff sold the property and made his returns to the judge, and not a clerk. The judge recorded the deed in his own office, thus assimilating his practice as much as he could, in pursuance of the 27th section of the act, to the practice of the Superior Court. *585 It was the proper place to record the deed in the judge’s office who issued the execution. It is true, a new' parish had been created before the deed was recorded, in consequence of the delay of the sheriff in making and returning the deed for record. Still, although the land fell into the new parish, it was proper to return and record the deed in the court in which it should have been recorded when the sale was made; because the act of 1813, requiring sheriff’s conveyances to be recorded in the conveyance office of the parish where the land was situated, had not been passed.
The sheriff’s deed was therefore properly recorded; still, until the passage of the act of 1828, a copy of the record could not be given in evidence without proving the loss of the original. The act of 1828 provided, that “a copy of any sale or deed of conveyance heretofore made and executed by any sheriff, or any other person exercising and performing the duties of sheriff in this State, certified to be a true copy by the clerk or deputy clerk of the court, in whose office such sale or deed of conveyance is or may be recorded, shall be received as evidence in the same manner and have the same effect in every respect as a duly certified copy of an authentic act.”
Under this act, the certified copy of the deed was properly received in evidence, and fully establishes the rights of the plaintiffs. Indeed, as the said sheriff’s sale was plead with very special reference to it in the suit of Rebecca Bosler against the defendant, it was no doubt used to obtain a better compromise. She could, with little pretence claim, as heir of her uncle, that part of his property which had been sold before his death to satisfy judgments and executions obtained contradictorily with him in person.
The district judge has equitably apportioned the superficial quantity of the land belonging to the plaintiffs and defendant, the original claim having been curtailed by the government. He has correctly established the liability of the warrantor, and made the proper disposition of the claim for improvements ; and we are of opinion his judgment is correct in every respect.
It is therefore decreed, that it be affirmed, with costs.